1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11   JAHMOL FACEN                            No. C 12-4648 LB

12            Plaintiff,

                                            **ORDER GRANTING IN PART AND**
13       v.                                 **DENYING IN PART PLAINTIFF'S**
                                            **MOTION FOR SUMMARY**
14   CAROLYN W. COLVIN,                      **JUDGMENT, DENYING DEFENDANT'S**
     Acting Commissioner of Social Security, **CROSS MOTION FOR SUMMARY**
15                                           **JUDGMENT, AND REMANDING FOR**
              Defendant.                     **FURTHER CONSIDERATION**
16
                                            **[Re: ECF Nos. 24, 26]**
17

18   _____/

19                                INTRODUCTION

20       Plaintiff Jahmol Facen moves for summary judgment, seeking judicial review of a final decision

21   by the Commissioner of Social Security denying him Social Security Income ("SSI") disability

22   benefits for his claimed disabilities of Attention Deficit Disorder ("ADD") and Depression.  Motion,

23   EFC No. 24.[1]  The Administrative Law Judge ("ALJ") found that Mr. Facen would be able to

24   perform his past work as a cashier and juice-maker at Jamba Juice if he abstained from drug use and

25   took psychiatric medication.  Accordingly, the ALJ denied his application for benefits.

26   Administrative Record ("AR") at 20-29.

27   _____

28       [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page numbers at the top of the document.

1    Pursuant to Civil Local Rule 16-5, the matter is deemed submitted for decision by this court

2  without oral argument.  All parties have consented to the court's jurisdiction.  Consent (Plaintiff),

3  ECF No. 10; Consent (Defendant), ECF No. 11.  For the reasons stated below, the court **GRANTS**

4  **IN PART** and **DENIES IN PART** Mr. Facen's motion for summary judgment, **DENIES** the

5  Commissioner's cross-motion for summary judgment, and **REMANDS** this case to the Social

6  Security Administration to obtain additional and updated evidence consistent with this order.

7                                          **STATEMENT**

8  **I. PROCEDURAL HISTORY**

9    Mr. Facen, now 25, applied for supplemental security income benefits on April 25, 2007.  AR

10  207.  He alleged that he became disabled in December 2006, when he was 19 years old, due to his

11  ADD and Depression.  AR 207.  The Commissioner denied his application both initially in July

12  2007, and upon reconsideration in December 2007.  AR 130-34, 137-141.  Mr. Facen timely

13  requested a hearing on January 25, 2008.  AR 143.

14    ALJ Benjamin Parks held a hearing on March 13, 2009.  AR 75-109.  Mr. Facen appeared with

15  his attorney, Nancy McCombs, and vocational expert Robert A. Raschke and medical expert David

16  J. Anderson also appeared and testified.  *Id*.  On April 17, 2009, the ALJ issued a decision denying

17  SSI benefits to Mr. Facen.  AR 112-25.

18    Mr. Facen appealed the ALJ's decision to the Social Security Appeals Council.  AR 126-34.  On

19  August 7, 2009, the Appeals Council overturned the ALJ's decision and remanded the case for a

20  new hearing.  AR 126.  It directed the ALJ to reevaluate the materiality of Mr. Facen's substance

21  abuse to his mental status in light of new evidence from Mr. Facen's therapist, Ellen Nichols.  AR

22  127-28.  Specifically, the Appeals Council directed the ALJ to (1) "obtain additional evidence

23  concerning all of [Mr. Facen's] mental impairments," (2) "evaluate [Mr. Facen's] mental

24  impairments in accordance with the special technique described in 20 CFR 416.920a," (3)

25  "determine whether [Mr. Facen] is under a disability taking into consideration all of the

26  impairments, including the drug addiction and/or alcoholism," (4) "further evaluate [Mr. Facen's]

27  subjective complaints," (5) "evaluate the other source opinions," (6) "give further consideration to

28  [Mr. Facen's] maximum residual functional capacity," and (7) obtain evidence from a vocational

1  expert to clarify the effect of the assessed limitation on [Mr. Facen's] occupational base."  AR 128-
2  29.

3      Mr. Facen appeared at the hearing on January 7, 2010, represented by counsel, Nancy McCombs.
4  Medical expert David J. Anderson, M.D., and vocational expert Robert A. Raschke were also
5  present and testified at the hearing.  AR 35-74.  On April 2, 2010, the ALJ issued a decision again
6  finding Mr. Facen not disabled and denied him SSI benefits.  AR 17-32.

7      The Commissioner's decision became final on July 11, 2012, when the Appeals Council denied
8  Mr. Facen's request for further review.  AR 1-5.  On September 5, 2012, Mr. Facen timely sought
9  judicial review under 42 U.S.C. § 405(g).  Complaint, EFC No. 1.  Both sides have now moved for
10  summary judgment.  Motion, ECF No. 24; Cross Motion, ECF No. 26.[2]

11  **II.  SUMMARY OF RECORDS AND ADMINISTRATIVE FINDINGS**

12      This section summarizes (A) the medical evidence in the administrative record, (B) other
13  opinions in the administrative record, (C) the medical expert's testimony, (D) the vocational expert's
14  testimony, (E) testimonies from Mr. Facen and Mr. Gaona, and (F) the ALJ's findings.

15      **A.  Medical Evidence**

16          *1.  Clinician Kamtha A. Keow from 1/18/2007 - 5/2/2007*

17      Kamtha A. Keow, a Senior Counselor/Clinician at PAES Counseling Services, treated Mr. Facen
18  from January 2005 to May 2005.  AR 307-53.  In Mr. Facen's initial evaluation at PAES on January
19  18, 2007, Ms. Kamtha and her clinical supervisor, Dr. Graham, diagnosed Mr. Facen with
20  Dysthymic Disorder, early onset, and Canabis Abuse.  AR 321 & 333.  Ms. Keow explained that
21  early onset was given "because of [Mr. Facen's history] of depression since early childhood."  AR
22  321.  She expounded that Mr. Facen presented with low-grade depression without any clear signs of
23  and symptoms of a major depressive episode.  *Id.*  She further explained that Mr. Facen was also
24  diagnosed with Cannabis Dependence based on his history and continued use of marijuana.  *Id.*  Ms.
25  Keow further noted that Mr. Facen, at the time, smoked marijuana daily.  *Id.*

27      [2] The court notes that Mr. Facen did not file a reply in support of his motion.  *See generally*
28  Docket.  Thus, the only briefs available for the court's consideration are Mr. Facen's motion and the
Commissioner's cross-motion.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Ms. Keow also produced a progress note for her last counseling session with Mr. Facen on May

2    2, 2007.  AR 307.  She reported that Mr. Facen was experiencing "low-grade depression (irritable

3    mood, easily agitated, depression)," and noted that Mr. Facen had denied any desire to take

4    prescribed psychiatric medication, believing that "prescribed medications are as bad as street

5    drug(s)."  *Id.*  Relatedly, Ms. Keow further reported that Mr. Facen possessed poor insight on his

6    mental health condition, and strongly suspected that he was self-medicating his depression with

7    marijuana.  *Id.*

8         *2.  Pyschiatric Emergency Services on 1/18/2007 and 6/15/2007*

9    On January 18, 2007, Mr. Facen was admitted to Psychiatric Emergency Services ("PES") of

10   San Francisco General Hospital for having an angry outburst after his Play Station was stolen.  AR

11   362.  There, Mr. Facen was diagnosed with Adjustment Disorder with Acute Disturbance of

12   Conduct, and Cannabis Abuse.  *Id.*  His records from the visit also indicate that Mr. Facen possessed

13   "poor impulse control and explosive (disorder)."  *Id.*

14   On June 16, 2007, Mr. Facen was admitted, for a second time, to PES.  This time, Mr. Facen was

15   sent from the Maxine Hall Health Center for being "extremely agitated," making "vague suicide

16   threats on his cell phone, making threats to 'use my arm as an ashtray'" and making "vague threats

17   of wanting to harm his mother."  AR 354.  Mr. Facen was diagnosed with Adjustment Disorder with

18   Disturbance of Conduct, Cannabis Abuse, and Borderline Personality Disorder.  *Id.*  The record of

19   this visit also noted that Mr. Facen was using marijuana and used to take antidepressants several

20   years ago.  *Id.*

21        *3.  Dr. Schultz and Stephanie Meyler on 7/5/2007*

22   On July 5, 2007, Stephanie Meyler, a case manager with the Crisis Resolution Team ("CRT") of

23   SFGH, and Dr. Schultz, the CRT MD, administered a psychiatric evaluation of Mr. Facen.  AR 422.

24   Based on routine sessions with Mr. Facen from June 15, 2007, to July 26, 2007, Ms. Meyler and Dr.

25   Schultz diagnosed Mr. Facen with Depressive Disorder NOS, Dysthymic Disorder, and Cannabis

26   Dependence.  *Id.*  In making this diagnosis, Ms. Meyler noted Mr. Facen's childhood history of

27   depression, his ongoing anger management problem, and his recent encounters with PES.  *Id.*  Ms.

28   Meyler also reported that Mr. Facen inquired about a cannabis card, expressed that he smoked weed

C 12-04648 LB
ORDER

4

"pretty much daily," and said that he resolved his anger issues by taking walks or using marijuana. *Id.*

### 4. Dr. Hilliard on 7/16/2007

Dr. Hilliard performed a Mental Residual Functional Capacity ("RFC") assessment of Mr. Facen on July 16, 2007.  AR 368-83.  Dr. Hilliard diagnosed Mr. Facen with Dysthymic Disorder and Cannabis abuse and concluded that he is "capable of performing at least simple one-step and two-step routine tasks on a sustained and independent basis."  AR 383.

### 5. Larkin Street Medical Clinic on 8/2/2007 and 11/6/2007

On August 2, 2007, Mr. Facen went to Larkin Street Medical Clinic requesting medication for his sinus congestion.  AR 404.  The progress note from this visit indicates that Mr. Facen expressed that he "smokes cigarettes and MJ daily but cannot quantify the amount of either."  *Id.*

On November 6, 2007, Mr. Facen went to Larkin Street Medical Clinic requesting an STD test.  AR 402.  The treating physician reported that Mr. Facen appeared easily agitated and anxious, and communicated that he was not eating regularly, was unemployed, and used marijuana.  *Id.*

### 6. Kathleen M. Ryan on 5/5/2008

Dated May 5, 2008, Kathleen M. Ryan, a Nurse Practitioner at Larkin Street Youth Clinic, wrote a letter describing Mr. Facen's mental health.  AR 401.  Ms. Ryan has intermittently treated Mr. Facen since March 2006.  *Id.*  Ms. Ryan noted that Mr. Facen suffers from clinical depression and anxiety, "which significantly affects his capacity in day to day functioning with impaired concentration, significant isolation and inability to function socially."  *Id.*

### 7. Clinical Evaluation at RAMS on 7/28/2008

On July 7, 2008, Mr. Facen received a clinical evaluation at Richmond Area Multi Services ("RAMS") prior to beginning therapy there with psychotherapist Dr. Bella Yu.  AR 437-43.  Mr. Facen's evaluation indicates that he was diagnosed with Major Depressive Disorder without psychotic features, and Cannabis Dependence.  AR 443.  Mr. Facen was also described as being cooperative, having a tired appearance, slow body movement, a soft tone in speech, an anxious affect and mood, and impaired insight of his condition.  AR 442.  Further, the report indicates that Mr. Facen "frequently used" marijuana, expressed "ongoing anxiety, depression for many years,"

1   and noted that Mr. Facen had previously received therapy at RAMS "several years ago."  AR 438-

2   40.

3       **8.  Dr. Bella Yu on 10/9/2008**

4       On October 9, 2008, Dr. Bella Yu, a psychotherapist at RAMS, administered a Mental Disorder

5   Assessment of Mr. Facen.  AR 409-411.  Based on her four individual psychotherapy sessions with

6   him on 8/5, 8/19, 8/26, and 9/2/2008, Dr. Yu diagnosed Mr. Facen with Major Depressive Disorder,

7   recurrent with mild severity, and Cannabis Dependence.  *Id.*  In doing so, Dr. Yu noted that Mr.

8   Facen persistently described and exhibited "depressed mood, sleep disturbance, decreased energy,

9   level and appetite," and was "easily agitated and angry with a lot of worries."  *Id.*  Dr. Yu also

10  reported that Mr. Facen was uninterested in receiving treatment to address his depressive symptoms

11  and substance use.  *Id.*  Dr. Yu noted that Mr. Facen, at this point, continued to use marijuana.  *Id.*

12      **9.  Clinical Evaluation at RAMS on 12/23/2008**

13      On December 23, 2008, Mr. Facen received a clinical evaluation at RAMS before beginning

14  therapy there with Ellen Nichols.  AR 455- 61.  Mr. Facen was diagnosed with Major Depressive

15  Disorder, Severe, and Cannabis Dependence.  AR 461.  Further, the evaluation described Mr. Facen

16  as appearing defensive with angry affect and mood, exhibiting slow body movement, and having

17  impaired insight and judgment regarding his condition.  AR 460.  Further, the evaluation noted that

18  Mr. Facen reported that he "frequently used" marijuana, and described being stressed because of his

19  "issues" with his mother.  AR 456.  Mr. Facen also reported regularly having a "high level of

20  anxiety" and using marijuana "to help him cope" with it.  AR 456- 58.

21      **10.  Dr. Inoue and Ellen Nichols on 2/18/2009**

22      On February 18, 2009, Dr. Inoue, a licensed psychologist with RAMS, and Ellen Nichols, a

23  counselor at RAMS, administered a Mental Disorder Assessment of Mr. Facen.  AR 433-35.  Ms.

24  Nichols initially treated Mr. Facen from September 2005 through May 2006, and then again in

25  December of 2008 through mid-February 2009.  *Id.*  In their assessment, Dr. Inoue and Ms. Nichols

26  diagnosed Mr. Facen with Major Depressive Disorder and Cannabis Dependence.  *Id.*  In reaching

27  this conclusion, they noted that Mr. Facen "is depressed most of the day on a daily basis," "has low

28  energy, poor motivation," and a "poor ability to concentrate and follow through with tasks."  *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Specifically, they reported that Mr. Facen exhibits difficulty with following structure and a

2   prescribed routine, has difficulty maintaining a consistent schedule, struggles with making basic

3   decisions, becomes easily fatigued, and is prone to respond to criticism with anger or "extreme hurt

4   feelings." AR 434.

5        In addition, Dr. Inoue and Ms. Nichols addressed whether Mr. Facen's level of mental

6   functioning, and their findings, would be different if he were to abstain from using marijuana for a

7   full year. In response, they reported that Mr. Facen "would probably function at a higher level if he

8   were sober for a year," partly because having the ability to stay sober would rely on the same skills

9   beneficial for functioning at a higher level. *Id.* Because Mr. Facen lacks the coping skills and uses

10  marijuana to help control his depressed mood, if he could stay sober, he probably "would be able to

11  maintain his focus better." *Id.*

12       ### 11. Ellen Nichols on 7/8/2009

13       On July 8, 2009, after the ALJ initially denied Mr. Facen's applications for disability benefits,

14  Ms. Nichols submitted a letter to the Appeals Council clarifying that the ALJ misinterpreted her

15  assessment of Mr. Facen's functional limitations if he were to stop using marijuana. AR 293-94.

16  First, Ms. Nichols noted that the ALJ erred by concluding, based on her assessment, that Mr.

17  Facen's remaining limitations would not meet or medically equal the criteria of listings 12.04 or

18  12.08, that he would only have mild restrictions in activities of daily living, and would only have

19  moderate difficulties in social functioning if he abstained from using marijuana. AR 293.

20  Specifically, she stated:

21       Of course nobody can make definitive predictions about how much Jahmol's functioning
         might improve if he quits smoking marijuana; however, I believe my assessment makes it
22       clear that I see Jahmol as having serious mental health impairments that are separate from
         the cannabis use and that he uses the cannabis to help him cope with his disturbing
23       mental states.

24  *Id.* In sum, Ms. Nichols emphasized that she believed Mr. Facen's limitations would remain at the

25  "marked" level even if he were to stay sober. *Id.*

26       Ms. Nichols also commented on her assessment of Mr. Facen's AXIS II diagnosis, and offered

27  her opinion regarding his reasons for using marijuana. AR 294. Ms. Nichols explained that

28  although Mr. Facen exhibited the symptoms and impairments for an AXIS II diagnosis, she gave

UNITED STATES DISTRICT COURT
For the Northern District of California

1    him an "AXIS II diagnosis of 799.9 Deferred" in her assessment.  *Id*.  Because she had only recently

2    started working with him after a three-year gap, she had not formulated a clear AXIS II diagnosis.

3    *Id*.  Ms. Nichols also stated that she believed Mr. Facen used marijuana to cope with his

4    impairments.  *Id*.  She explained, "I believe that Jahmol's use of cannabis appears to be his attempt

5    to cope with his problems.  If he were able to develop a healthier sense of self and a better way of

6    coping with his problems, the need for cannabis use would likely decrease or cease."  *Id*.

7         ***12.  Jean Choi on 12/2/2009 and 11/18/2010***

8         Dated December 2, 2009, Jean Choi, a counselor at RAMS, submitted a letter to Mr. Facen's

9    attorney, Nancy K. McCombs, regarding his therapy sessions with Mr. Facen.  AR 503.  Based on

10   her weekly therapy sessions with Mr. Facen beginning on October 5, 2009 (following Ellen

11   Nichols's departure from RAMS), Dr. Choi reported that Mr. Facen met the criteria for a primary

12   diagnosis of Personality Disorder NOS (Borderline and Narcissistic Traits) with the sequelae of

13   depressive symptoms, anxiety symptoms, and substance abuse.  AR 504.  In doing so, Dr. Choi

14   reported that Mr. Facen had continuously exhibited "depressive symptoms such as sleeping,

15   anhedonia, decreased appetite, weight loss, thoughts of death and suicidality, self-critical thoughts,

16   and feelings of worthlessness as well as anxiety symptoms" in their sessions.  AR 503.  Dr. Choi

17   also factored in Mr. Facen's difficulties with being able to calm himself or regulate his emotions

18   without resorting to self isolation, marijuana use, or self-harm into his diagnosis.  *Id*.  Given this

19   diagnosis, Dr. Choi reported that "Mr. Facen's current ability to function within, and meet the

20   demands of, a work environment or academic setting are severely limited."  AR 504.

21        On November 11, 2010, Jean Choi and Dr. Chan administered a Mental Disorder Assessment of

22   Mr. Facen.  AR 299-301.  Similar to her earlier diagnosis, she diagnosed Mr. Facen with Major

23   Depressive Disorder NOS, Canabis Dependence, Personality Disorder NOS, Asthma and problems

24   with primary support, and social environment.  Based on this diagnosis, she concluded the

25   following:

26        Mr. Facen's emotional difficulties with depression, anxiety, and affect dysregulation
          were present since childhood, prior to any substance use.  Based on clinical history and
27        observations, Mr. Facen's emotional and interpersonal difficulties would remain at a
          significant level of severity even with abstinence from cannabis use.

28

AR 301.

**B. Other Opinions: Sam Edwards on 12/18/2008**

Dated December 12, 2008, Sam Edwards, a clinical social worker at City College San Francisco ("CCSF") Pyschological Services, wrote a letter regarding his interactions with Mr. Facen.  AR 430.  Based his interactions with Mr. Facen on 10/8, 10/28, 10/30, and 12/14/2008, Mr. Edwards conveyed the following:

> In my clinical opinion, based on the data I have gathered through face to face interactions with him, telephone contact, and from the notes of colleagues, the former CCSF student has major psychological-behavioral problems.  He quickly becomes angry with the least provocation and is seemingly unable to constructively manage it.  He exhibits poor judgment and strong tendencies to conflict with people with whom he interacts.  I also suspect that he may be experiencing a significant depression, which may be suggested the powerful agitation and impatience that he presents.  His emotions seemed to dominate him, causing one to get the impression that he has little capacity to restrain his anger impulses.

AR 431.

**C. Psychological Expert Testimony**

*1. Dr. Anderson*

At the second hearing before the ALJ on January 7, 2010, Dr. David Anderson, the Psychological Expert (the "PE"), testified about the materiality of Mr. Facen's marijuana use to his mental impairment.  AR 60- 69.  Dr. Anderson testified that Mr. Facen's marijuana use is material because it interfered with and delayed him from taking psychiatric medication much earlier in his diagnosis.  AR 65.  Specifically, he opined:

> So I have no idea what this – what his case would be like if two months into this treatment at RAMS, way back in 2F, (INAUDIBLE) December of 2006, January of 2007 – if he had been placed on psychiatric medications, that would be viewed as a standard practice for this kind of situation, I think – my personal opinion – feeling is that we would have seen a very different course... I think he would have been much better.

AR 63.  Dr. Anderson further clarified that even if the Mr. Facen's adherence to a medication plan did not immediately produce results, "[t]here would have been opportunities for trials – if the first medication didn't work, an opportunity to try other medications that are very helpful in treating late adolescents and young adults in – with his kind of emotional disturbance."  *Id*.  At the same time, Dr. Anderson also cautioned that he had "no idea whether the treatment [Mr. Facen] only recently

UNITED STATES DISTRICT COURT
For the Northern District of California

1   begun is going to be effective or not," but explained that "there's every reason to believe that it can

2   be and will be."  AR 65.

3       Mr. Facen's attorney, Nancy McCombs, then asked Dr. Anderson to respond to a finding made

4   by Mr. Facen's therapist, Dr. Choi, at RAMS concerning the materiality of his marijuana use.  *Id.*  In

5   response to Dr. Choi's determination that Mr. Facen would continue to experience a significant level

6   of impairment even if he abstained from using marijuana, Dr. Anderson partially agreed.  AR 67.

7   Specifically, he testified, "I'm not sure I would disagree with that," and re-emphasized that, "My

8   issue in that is as long as he was using marijuana, it was postponing him getting the treatment that he

9   needed, which is pharmacology."  *Id.*

10      Dr. Anderson then disagreed with Ms. McComb's insinuation that Mr. Facen's personality traits

11  contributed to his refusal to take psychiatric medication earlier in his diagnosis.  *Id.*  Rather, Dr.

12  Anderson attributed Mr. Facen's decision to "more of a stage of life issue."  AR 68.  He explained

13  further that:

14      It's a very, very common struggle that people who have significant emotional difficulties
        in that transition from adolescence into young adulthood have around dependency on
15      anything related to an authority figure, i.e. a physician offering drugs.  So it isn't
        necessarily a function of psychopathology.  It is a – it is a part of the development stage
16      that they find themselves in.

17  *Id.*

18      Dr. Anderson also disagreed with Dr. Choi's diagnosis of Mr. Facen as having Borderline

19  Personality Disorder.  *Id.*  Dr. Anderson testified that although such a diagnosis was not precluded,

20  the available evidence did not support it.  *Id.*  He conceded that Mr. Facen has personality traits that

21  interfere with his functioning, but that, with insight oriented psychotherapy and better adherence to

22  his medication, he could begin to "gradually feel a much greater sense of control and effectiveness."

23  *Id.*

24      **D.  Vocational Expert Testimony**

25          *1.  Robert A. Raschke*

26      Mr. Raschke is the Vocational Expert (the "VE") who testified during the second hearing on

27  January 7, 2010, and answered two hypotheticals posed by the ALJ.  AR 70- 73.  The ALJ first

28  asked whether there would be any jobs in the regional or national economy that a person with the

following characteristic could perform: the same age and education level as Mr. Facen with no exertional limitations; a mental RFC of mild for activities of daily living; moderate impairment for social functioning; mild concentration, persistence and pace; difficulty with detailed and complex instructions 40 to 50 percent of the time; capable of simple and repetitive tasks and maintaining a normal production schedule; a need for limited public contact; and no episodes of decompensation. AR 70-71.  Mr. Raschke responded that the hypothetical was not "particularly restrictive" and that such an individual, like Mr. Facen, could perform fast food jobs as well as "millions of other entry-level jobs at all exertional levels."  AR 71.

The ALJ then posed a second hypothetical, asking the same question for an individual with the following characteristics: no exertional limitations; a mental RFC of mild for activities of daily living; "marked" social function in terms of getting along with coworkers or the general public; moderate concentration, persistence, and pace; would be off task 40 to 50 percent on detailed and complex instructions as well as simple, repetitive instructions; a need for limited public contact; and no episodes of decompensation. AR 71-72.  Mr. Raschke responded that such an individual's moderate impairment to concentration, pace and persistence would render him/her unemployable. Additionally, this individual's marked social restriction would "eliminate pretty much any kind of employment." AR 72.

**E. Witness Testimony**

### 1. *Mr. Gaona's Testimony*

During the first ALJ hearing on March 13, 2009, Mr. Facen's friend, Anthony Gaona, testified on Mr. Facen's difficulties with interacting with others and performing day-to-day tasks.  AR 99-102.  He described Mr. Facen as lacking the self-confidence to connect with people, and sometimes, being unable to talk to others altogether.  AR 101.  Further, he explained that Mr. Facen secluded himself when he was not getting along with someone else, that "he just kind of, like, withdraws." *Id*.

Mr. Gaona also testified that Mr. Facen lacked the ability to meet his basic needs.  AR 102.  For example, he struggled with the task of being able to buy groceries to feed himself. *Id*.  He also infrequently changed his clothes, wearing the same items for a month or so at a time. *Id*.

### 2. *Mr. Facen's Testimony*

During the second ALJ hearing on January 7, 2010, Mr. Facen described his educational and employment history, his medical impairment, and his marijuana use.

Mr. Facen graduated from Galileo High School in 2006. He described his academic performance as a "struggle" and explained that he was in special education classes. AR 43. He testified that he was "pretty much angry a lot of times" and that he would "get into rages, and it would just get [him] into trouble." *Id*.

Mr. Facen also testified that he worked for nine months in 2006 at Jamba Juice. AR 198. He testified that his job responsibilities included washing dishes, handling cash, and "mixing up" the juices. AR 37-38. Mr. Facen described having difficulty in learning on the job and keeping up with the amount of and pace of work at Jamba Juice. AR 44. He also testified to eating and drinking "on the floor" during non-break times. *Id*. Prior to Jamba Juice, Mr. Facen worked as a tele-marketer for a company called Media Promotions for three weeks trying to sell newspapers. AR 38. He was ultimately terminated for not being able to make a sale. AR 45. Since being terminated from Jamba Juice for misreading his schedule and missing work, Mr. Facen has not held any other substantially gainful work. AR 37-45.

Mr. Facen then testified about his medical condition and his therapy sessions at RAMS. AR 41. He described that he was being treated for depression and "this thing called, like personality disorder or something." *Id*. In response to the ALJ's questioning about the effects of Mr. Facen's depression on his work ability, he replied, "A low energy– I just don't feel like doing virtually anything most of the time. I just lay in bed a lot. I mean, I walk, but I just walk nowhere. I just drift around. It impairs my concentration." *Id*.

Mr. Facen also responded to a series of questions by the ALJ regarding his marijuana use at the time. AR 46. Mr. Facen testified that he has "been trying to cut back" on his marijuana usage, describing that whereas he used to use it daily, "Now, it's just, like, once every, like – when I stretch it out, it's just like – maybe, like, a few weeks – not a few weeks – like days a week instead of, like, every day." *Id*. Then, in response to the ALJ question regarding Mr. Facen's reasons for using marijuana, he testified that "It calms me down and kind of, like, makes me not feel depressed –

temporarily, of course – but, I mean, that's what the medications are for." AR 47.  Further, Mr.

Facen described feeling a "little bit more depressed and a little more – what's another word to

describe angry – like, moody, irritable, stuff like that" after initially cutting back on his marijuana

use, but described the overall effect as not making "much of a difference."  AR 50.

Finally, Mr. Facen also responded to psychiatric examiner Dr. Anderson's questions regarding

his decision to postpone using psychiatric medication until nearly three years into his treatment.  AR

56.  Mr. Facen testified:

> I mean, to answer your question, like I was offered, but at the same time, like, I was so,
> like anxious and afraid of the risks of medication that I refused – I refused offers until,
> like, now... I thought [the psychiatric drugs] were going to do the opposite of what they
> were meant to do. I thought – I thought I was going to get more depressed than I already
> am currently.  And, I thought that, like, it may increase my chances of me, you know,
> hurting myself or, you know, hurting others.

AR 57.

Mr. Facen then described that, after being on medication for six weeks at the time, his

medication has helped him "slowly," but that he still does not feel "like, you know, happy or

whatever.  I'm still, like, the same depressed, you know, person."  AR 58.

**F.  Summary of the ALJ's Decision**

Applying the sequential evaluative process, on April 2, 2010, the ALJ held that Mr. Facen was

not disabled under section 1614(a)(3)(A) of the Social Security Act and thus was not entitled to

supplemental security income.  AR 28.

At step one, the ALJ found that Mr. Facen had not engaged in substantial gainful activity since

April 25, 2007.  AR 22.

At step two, the ALJ found that Mr. Facen suffered from the following severe impairments:

"depression and cannabis abuse."  AR 23.  The ALJ found that Mr. Facen was diagnosed with

"depressive disorder [not otherwise specified]," his record indicated a regular usage of marijuana,

and his GAF scores ranged from 40-50.  *Id*.  His aforementioned impairments have resulted in

psychiatric admissions, and cause Mr. Facen more than minimal limitation in his work functioning

ability.  *Id*.

At step three, the ALJ  found that Mr. Facen's impairments, including his substance use disorder,

1   were in the listed regulations, and satisfied the requisite criteria of those provisions.  *Id.*

2   Specifically, Mr. Facen satisfied the "paragraph A" criteria because, with his substance abuse, he

3   suffers from "depressive disorder [not otherwise specified]."  The ALJ observed that clinical notes

4   for Mr. Facen from PAES from January 2007 through May 2007 showed that he demonstrated poor

5   insight on his mental health and substance use issues, and that he had been suspected of self-

6   medicating his depression with marijuana.  *Id.*

7        The ALJ held that Mr. Facen also satisfied at least two of the "paragraph B" criteria because he

8   has: "moderate restriction of activities of daily living; marked difficulties in maintaining social

9   functioning; marked difficulties in maintaining concentration, persistence and pace, and no episodes

10  of decompensation."  In part, the ALJ drew upon Dr. Allan Taggard and Kathleen M. Ryan's report

11  from May 2008 for support that Mr. Facen suffered from childhood depression and anxiety that

12  significantly affects his everyday functioning with impaired concentration, isolation and inability to

13  function socially.  *Id.*  The ALJ also observed that in February 2009, treating medical professionals

14  Sachi Inoue and Ellen Nichols opined that Mr. Facen is markedly limited in most areas of

15  functioning.  AR 24.

16       The ALJ held, however, that in the absence of Mr. Facen's substance use problem, he would not

17  have an impairment or combination of impairments that meet or medically equals any of the listed

18  impairments.  Mr. Facen's impairment would still cause more than a minimal impact on his ability to

19  perform basic work, but his remaining limitations would not satisfy at least two of the "paragraph B"

20  criteria.  As such, the ALJ determined that if Mr. Facen's substance use was controlled he would not

21  suffer from a severe enough impairment to meet the requirements of step three.  ADR 24.

22       The ALJ then determined Mr. Facen's residual functional capacity in order to assess at steps

23  four and five whether he could perform his past relevant work or any other work, considering his

24  age, education, and work experience.  AR 24-25.  The ALJ found that if Mr. Facen stopped his

25  substance use and took his psychiatric medication, he would have the residual functional capacity to

26  perform a full range of work at all exertional levels but with nonexertional limitations.  AR 25.

27       In making this RFC finding, the ALJ considered the symptoms and how consistent they were

28  with the objective medical evidence (based on the requirements of 20 C.F.R. § 404.1529 and §

**UNITED STATES DISTRICT COURT**
For the Northern District of California

416.929 and Social Security Rulings 96-4p and 96-7p). *Id.* The ALJ followed a two-step process, first determining whether there was a medically-determinable physical or mental impairment that reasonably could be expected to produce Mr. Facen's pain and symptoms, and then evaluating the intensity, persistence, and limiting effects of the symptoms to determine the extent that they limited Mr. Facen's ability to do basic work activities. *Id.* For the second part, whenever Mr. Facen's statements about the intensity or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the ALJ made findings on the credibility of the statements based on "the entire case record." *Id.*

As for Mr. Facen's statements, the ALJ noted that he alleged at the hearing that he was unable to work because of his attention deficit disorder and depression. *Id.* Then the ALJ described Mr. Facen's testimony. Mr. Facen testified that his problems began in the second grade, and as a teenager, he was "found to be depressed." *Id.* Mr. Facen described being in special education classes in high school, and verbalized that he started using drugs at the age fourteen. He added that he smoked marijuana daily before going to work at Jamba Juice, where he worked as a cashier for nine months. Before that, Mr. Facen testified that he worked as a telemarketer trying to sell newspapers for several weeks. *Id.* Mr. Facen alleges that he reduced his marijuana usage, but that it has been a struggle because he becomes more depressed when he does so. He also testified that he still struggles with depression, has low energy, "lies in bed a lot," and has problems concentrating, sleeping, shopping, cooking and cleaning. *Id.*

After recounting Mr. Facen's testimony, the ALJ found that if Mr. Facen abstained from substance use and took his medication, his "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." AR 25-26.

The ALJ first turned to the record to establish that Mr. Facen's substance use markedly affected his functioning. He reviewed Mr. Facen's psychiatric emergency service admission in June 2007, where Mr. Facen admitted to smoking marijuana daily. *Id.* The ALJ observed that Mr. Facen reported wanting "to kill himself, his mother and people in society," and that he was "anxious,

UNITED STATES DISTRICT COURT
For the Northern District of California

1  agitated, entitle(d), labile and was assigned a GAF score of 40, indicating some impairment in reality

2  testing or communication or major impairment in several areas." AR 26.  The ALJ also observed

3  that Mr. Facen underwent a psychiatric evaluation on July 5, 2007, where he presented "ambivalent

4  eventually stating he doesn't want to be depressed or angry anymore, and inquired about a cannabis

5  club card." *Id*.  The ALJ further noted that Mr. Facen was diagnosed with depressive disorder NOS,

6  cannabis dependence and assigned a GAF of 50.  *Id*.

7      The ALJ also found similar conclusions in Dr. Yu's records from October 2008, and Sam

8  Edward's letter from the student health services department at SF City College.  *Id*.  The ALJ noted

9  from Dr. Yu's records that Mr. Facen "reported having depressed mood, sleep disturbance,

10  decreased energy level and appetite," as well as heightened irritability and a worrisome disposition.

11  *Id*.  Similarly, the ALJ observed from Mr. Edward's letter that Mr. Facen's "emotions seemed to

12  dominate him causing him to get the impression that he has little capacity to restrain his anger

13  impulses." *Id*.  The ALJ further observed from Dr. Yu's records that Mr. Facen "did not seem to be

14  interested in receiving treatment to address his depressive symptoms and substance abuse." *Id.*

15  Corroborating these findings, the ALJ noted from a letter dated December 2, 2009, from Mr.

16  Facen's therapist at RAMS, Jean Choi, that Mr. Facen meets the criteria for a primary diagnosis of

17  personality disorder NOS, with the sequelae of depressive symptoms, anxiety symptoms, and

18  substance abuse.  The ALJ also noted Dr. Choi reporting that Mr. Facen's "current ability to

19  function within and meet the demands of a work environment or academic setting are severely

20  limited." AR 27.

21      The ALJ then turned to the record to determine that Mr. Facen would have the residual

22  functional capacity to perform a full range of work at all exertional levels if he abstained from using

23  marijuana.  The ALJ observed that Mr. Facen's treating sources in February 2009, Dr. Sachi Inoue

24  and Ellen Nichols, "pointed out that [Mr. Facen] would probably function at a high level if he were

25  sober at least one year." *Id*.  The ALJ further observed from their records that if Mr. Facen "is able

26  to become sober, he would be able to maintain his focus better." *Id*.

27      The ALJ then turned to the issue of Mr. Facen's psychiatric medication usage.  The ALJ

28  observed from Dr. Anderson's testimony that had Mr. Facen chosen to take medication for his

UNITED STATES DISTRICT COURT
For the Northern District of California

1   impairments earlier in his treatment, he "would have been much better." *Id*.  In reviewing Dr.

2   Anderson's testimony, the ALJ observed that Mr. Facen had been on Zoloft for one month despite

3   being in treatment for three years. *Id*.  Specifically, the ALJ observed that Dr. Anderson reported

4   that Mr. Facen had at least two episodes in January and June of 2007 and had been seen in

5   psychiatric wards, and had been in outpatient care at RAMS. *Id*.  The ALJ further observed from

6   Dr. Anderson's testimony that Mr. Facen "was using [marijuana] daily which interferes with his

7   treatment and has used [marijuana] instead of psychiatric medications." *Id*.  As such, the ALJ noted

8   from Dr. Anderson's testimony that Mr. Facen has continued to smoke marijuana instead of getting

9   treatment, and that he would have been better had he started taking medication at the beginning of

10  his treatment. *Id*.

11      The ALJ further explained that Mr. Facen's statements about the severity of his impairments

12  lack credibility because of his ongoing marijuana usage and, until recent, refusal to take psychiatric

13  medication. *Id*.  Although the record reflects Mr. Facen's three-year history of medical impairments,

14  there is no sustained period of time during this span that Mr. Facen had not used marijuana or taken

15  any psychiatric medication. *Id*.  The ALJ recounted that Mr. Facen's clinical progress notes and

16  evaluations documenting his depressive symptoms were accompanied by his ongoing marijuana use.

17  *Id*.  The ALJ again noted that Dr. Sachi Inoue and Ellen Nichols believed that Mr. Facen "would

18  need at least one year of sobriety and he would function at a high level." *Id*.  Accordingly, the ALJ

19  determined that as Mr. Facen's records do not demonstrate a period of sobriety with a treating

20  physician, his statements regarding the severity of his medical impairments lack credibility.

21      Lastly, the ALJ discussed the weight given to the various sources in determining Mr. Facen's

22  residual functional capacity.  The ALJ explained that the administrative findings of fact made by the

23  State Agency medical physicians and other consultants were weighed the same as statements from

24  non-examining expert sources. AR 28.  The ALJ then explained that Dr. Anderson's opinion was

25  given more weight because he reviewed the record, and his opinion was consistent with the record as

26  a whole. *Id*.  In accordance with § 416.927, the opinions of Mr. Facen's treating sources were given

27  more weight because they had the opportunity to treat the claimant. *Id*.

28      Having determined Mr. Facen's RFC as allowing him to perform a full range of work at all

exertional levels, the ALJ proceeded with step four of the sequential evaluative process. *Id.* At step four, the ALJ found that if Mr. Facen stopped his substance use , he would be able to perform past relevant work as a fast food worker, DOT (# 311.472-010), because, as the vocational expert testified, the position required light, unskilled work. *Id.* As the ALJ decided this case at step four, he did not issue a finding regarding step five.

The ALJ thus concluded that Mr. Facen was not disabled as defined in the Social Security Act from April 25, 2007, to the date of the ALJ's decision. *Id.*

## ANALYSIS

Mr. Facen challenges the ALJ's decision on three grounds. He argues the following: (1) the ALJ abused his discretion by misconstruing material evidence in support of his determination; (2) the ALJ's findings and conclusions regarding cannabis use are contrary to the weight of the evidence of record; and (3) the record is incomplete because the ALJ failed to obtain a psychological consultative examination as the Appeals Counsel directed him to in its August 7, 2009 remand order. Motion, EFC No. 24 at 10-11. The Commissioner challenges Mr. Facen's assertions and argues that Mr. Facen's disability could be treated through the use of psychiatric medication and that Mr. Facen's refusal to take medication precludes an award of benefits. The court agrees that the ALJ erred, but if the Commissioner is correct that Mr. Facen's disability could be treated through the use of psychiatric medication, then the Commissioner's argument would carry the day. Accordingly, the court remands this action to the Social Security Administration so additional and updated information can be obtained consistent with this order.

## I. Standard of Review

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the plaintiff initiates the suit within 60 days of the decision. District courts may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." 42 U.S.C. § 405(g); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrew v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    1995).  If the evidence in the administrative record supports both the ALJ's decision and a different

2    outcome, the court must defer to the ALJ's decision and may not substitute its own decision.  *See*

3    *id.*; *accord Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).

4    **II.  Applicable Law: First Five Steps to Determine Disability**

5         An SSI claimant is considered disabled if (1) he suffers from a "medically determinable

6    physical or mental impairment which can be expected to result in death or which has lasted or can be

7    expected to last for a continuous period of not less than twelve months," and (2) the "impairment or

8    impairments are of such severity that he is not only unable to do his previous work but cannot,

9    considering his age, education, and work experience, engage in any other kind of substantial gainful

10   work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(A) & (B).

11        The Social Security regulations set out a five-step sequential process for determining whether

12   claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The

13   five steps are as follows:

14
15        **Step One.**  Is the claimant presently working in a substantially gainful activity?  If so, then the
     claimant is "not disabled" and is not entitled to benefits.  If the claimant is not working in a
16   substantially gainful activity, then the claimant's case cannot be resolved at step one, and the
     evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(a)(4)(i).

17        **Step Two.**  Is the claimant's impairment (or combination of impairments) severe?  If not, the
     claimant is not disabled.  If so, the evaluation proceeds to step three.  *See* 20 C.F.R. §
18   404.1520(a)(4)(ii).

19        **Step Three.**  Does the impairment "meet or equal" one of a list of specified impairments
     described in the regulations?  If so, the claimant is disabled and is entitled to benefits.  If the
20   claimant's impairment does not meet or equal one of the impairments listed in the regulations,
     then the case cannot be resolved at step three, and the evaluation proceeds to step four.  *See* 20
21   C.F.R. § 404.1520(a)(4)(iii).

22        **Step Four.**  Considering the claimant's RFC, is the claimant able to do any work that he or she
     has done in the past?  If so, then the claimant is not disabled and is not entitled to benefits.  If
23   the claimant cannot do any work he or she did in the past, then the case cannot be resolved at
     step four, and the case proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).
24
25        **Step Five.**  Considering the claimant's RFC, age, education, and work experience, is the
     claimant able to "make an adjustment to other work?"  If not, then the claimant is disabled and
26   entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is able to do other work,
     the Commissioner must establish that there are a significant number of jobs in the national
27   economy that the claimant can do.  There are two ways for the Commissioner to show other jobs
     in significant numbers in the national economy: (1) by the testimony of a vocational expert or
28   (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.
     If the Commissioner meets this burden, the claimant is not disabled.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   For steps one through four, the burden of proof is on the claimant.  At step five, the burden

2   shifts to the Commissioner.  *See Tackett*, 180 F.3d at 1098**.**

3   **III.  The ALJ Misinterpreted Dr. Inoue and Ms. Nichols's Opinion**

4        In his motion, Mr. Facen contends that the ALJ misinterpreted Dr. Inoue and Ms. Nichols's

5   findings.  Motion, ECF No. 24 at 11-12.  Specifically, he argues that the ALJ erred by concluding

6   that based on Dr. Inoue's and Ms. Nichols's report, Mr. Facen would perform at a "high level" if he

7   abstained from using drugs for one year.  *Id*.  What Dr. Inoue and Ms. Nichols actually said was:

8        Jahmol would probably function at a high*er* level if he were sober for at least one year, partly
         because his becoming sober would have depended on his developing a healthier sense of self

9        and effective coping skills, which he currently doesn't have.  Jahmol reports that he uses
         cannabis to help him cope with depressed mood and feelings of anxiety.  Probably if he is

10       able to become sober, Jahmol would be able to maintain his focus better.

11   AR 434 (emphasis added).

12        Mr. Facen contends that this misinterpretation warranted review of his case by the Appeals

13   Council.  Motion, ECF No. 24 at 11-12.  Specifically, Mr. Facen argues that the Appeals Council

14   should have granted review under 20 C.F.R. § 404.970(a)(1)[3] because the ALJ abused his discretion

15   by misconstruing the use of the word "higher."  Motion, ECF No. 24 at 12.  Ms. Nichols clarified

16   her and Dr. Inoue's position in a letter she submitted to the Appeals Council on July 7, 2009, where

17   she explained that Mr. Facen's limitations would remain at the "marked" level even if he stopped

18   using marijuana.  AR 293.  The Appeals Council instructed the ALJ in its decision on August 7,

19   2009, to review this letter in re-evaluating the effects of Mr. Facen's substance use on his

20   impairments.  AR 127-128.  The ALJ, however, did not review Ms. Nichols's letter to correct his

21   misinterpretation of her original findings in his April 2, 2010 decision.

22        Here, Mr. Facen's contention has merit.  The ALJ abused his discretion by misconstruing Ms.

23   Nichols's findings.  To interpret her use of the word higher in an absolute capacity, especially in

24   light of her clarification, misconstrues the substance of her and Dr. Inoue's findings.

25   _____

26        [3] Generally speaking, the Appeals Council's power to review hearing decisions is limited to
     four situations: 1) when the ALJ abuses his discretion,  20 C.F.R. § 404.970(a)(1); 2) when there is

27   an error of law, *id*. § 404.970(a)(2); 3) when the ALJ's decision is not supported by substantial

28   evidence, *id*. § 404.970(a)(3); 4) and when "there is a broad policy or procedural issue that may
     affect the general public interest," *id*. § 404.970(a)(4).

UNITED STATES DISTRICT COURT
For the Northern District of California

**IV.  The ALJ Failed to Properly Review the Record to Determine the Effects of Mr. Facen's Cannabis Use**

Second, Mr. Facen argues that the ALJ failed to (1) demonstrate through the record that his substance use markedly affected his functioning, and (2) give proper weight to his treating physicians' opinions.  Motion, ECF No. 24 at 13-14.

### A.  The ALJ Failed to Show that Mr. Facen's Substance Use Markedly Affected his Functioning

Mr. Facen contends that the ALJ failed to show with any specificity that his cannabis use affected his disability.

In cases where the record indicates the claimant suffers from a drug or alcohol addiction, "the ALJ must conduct a drug and alcoholism analysis by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol."  *Parra*, 481 F.3d at 747; *see also* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); *Bustamante*, 262 F.3d at 954; *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).  If a claimant is found to be disabled and there is medical evidence of drug addiction or alcoholism, the Commissioner must then determine whether that substance abuse is a contributing factor material to the finding of disability.  20 C.F.R. § 404.1535(a).  Essentially, drug addiction or alcoholism is a "contributing factor" under the statute if the claimant's disability ceases when he stops using drugs or alcohol.  *Id.* § 404.1535(b).

The Ninth Circuit has stressed that courts must not "fail to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol."  *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).  That is, "[j]ust because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too."  *Id.*  The burden, however, rests on the claimant to prove that drug or alcohol abuse is not a contributing factor material to her disability.  *Parra*, 481 F.3d at 748.

Here, the ALJ administered the necessary drug analysis, but erred in doing so.  The ALJ's use of evidence from the record does not support the ALJ's finding that Mr. Facen's marijuana use directly contributed to his disability.  For example, in his April 2, 2010 decision, the ALJ referenced Mr. Facen's psychiatric emergency visit in June 2007 and then noted that he admitted to smoking

1   marijuana daily at that time.  AR 25-26.  Beyond listing the details from the actual visit, the ALJ

2   provided no causal explanation between Mr. Facen's marijuana use and his health impairments.

3   Additionally, the ALJ cited to Mr. Facen's psychiatric evaluation from July 5, 2007, where he

4   described Mr. Facen's mood prior to noting that Mr. Facen had inquired about getting a cannabis

5   card.  AR 26.  Similarly, the ALJ then referenced Dr. Yu's records for Mr. Facen from 2008,

6   describing Mr. Facen's anger impulses, depressed mood, and sleep disturbance, as well as his

7   disinterest in receiving treatment to address his health conditions.  *Id.*  In this manner, the ALJ

8   attempted to establish a causal link between Mr. Facen's marijuana use and his health impairments

9   by relying on the record.  In effect though, he only identified correlations.  As such, Mr. Facen's

10  objection that the ALJ failed to state with any specificity the effects his cannabis use had on his

11  ability to function is well-taken.

12      ***B. The ALJ Failed to Give Proper Weight to the Evidence Provided by Mr. Facen's***

13      ***Treating Physicians.***

14      Additionally, Mr. Facen contends that the ALJ failed to give proper weight to, and reject, the

15  opinions of his treating physicians, Ms. Nichols and Dr. Choi.  Motion, EFC No. 24 at 14.

16      When determining whether a claimant is disabled, the ALJ must consider each medical opinion

17  in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b); *Zamora v.*

18  *Astrue*, No. C 09-3273 JF, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010).  "By rule, the Social

19  Security Administration favors the opinion of a treating physician over non-treating physicians."

20  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 416.927(d)(1)-(2)); *see also* 20

21  C.F.R. § 404.1527(d).  "The opinion of a treating physician is given deference because 'he is

22  employed to cure and has a greater opportunity to know and observe the patients as an individual.'"

23  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Sprague v.*

24  *Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

25      "Generally, the opinions of examining physicians are afforded more weight than those of non-

26  examining physicians, and the opinions of examining non-treating physicians are afforded less

27  weight than those of treating physicians."  *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(1)-

28  (2)); *see also* 20 C.F.R. § 404.1527(d).  Accordingly, "(i)n conjunction with the relevant regulations,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   (the Ninth Circuit has) developed standards that guide (the) analysis of an ALJ's weight of medical

2   evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. §

3   404.1527).  To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

4   state clear and convincing reasons that are supported by substantial evidence." *Id.* (quotation and

5   citation omitted).  Opinions of non-examining doctors alone cannot provide substantial evidence to

6   justify rejecting either a treating or examining physician's opinion. *See Morgan*, 169 F.3d at 602.

7   An ALJ may rely partially on the statements of non-examining doctors to the extent that independent

8   evidence in the record supports those statements. *Id.* Moreover, the "weight afforded to a non-

9   examining physician's testimony depends 'on the degree to which they provide supporting

10  explanations for their opinions.'" *See Ryan*, 528 F.3d at 1201 (quoting 20 C.F.R. § 404.1527(d)(3)).

11         Here, the ALJ did not comprehensively consider all of Ms. Nichols's medical opinions.  The

12  ALJ failed to review additional evidence provided by Ms. Nichols on July 8, 2009, despite being

13  instructed to do so by the Appeals Council.  AR 127-128.  In this letter, Ms. Nichols explained that

14  Mr. Facen would likely experience continued disability even if he stopped using cannabis.  AR 293.

15  Specifically, she noted that Mr. Facen suffered from "serious mental health impairments" that were

16  separate from his cannabis use. *Id.* She reported:

17         Of course nobody can make definitive predictions about how much Jahmol's
           functioning might improve if he quits smoking marijuana; however, I believe my
18         assessment makes it clear that I see Jahmol as having serious mental health
           impairments that are separate from the cannabis use and that he uses the cannabis to
19         help him cope with his disturbing mental states.

20  *Id.*

21         The ALJ did not specifically discuss this evidence in his April 2, 2010 decision despite its

22  direct relevance to his drug analysis of Mr. Facen.  The law makes clear that the ALJ must consider

23  each medical opinion in the record together with the rest of the relevant evidence.  20 C.F.R. §

24  416.927(b).  Here, the ALJ only reviewed and discussed Ms. Nichols and Dr. Inoue's February 2,

25  2009 medical assessment of Mr. Facen in his decision.  AR 435; AR 26.  The ALJ did not

26  acknowledge Ms. Nichols's additional evidence.

27         The ALJ also erred by failing to provide any reasons for rejecting Ms. Nichols's opinion. *Id.*

28  The Ninth Circuit makes clear that an ALJ must provide clear and convincing reasons that are

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    supported by substantial evidence to reject the uncontradicted opinion of a treating or examining

2    physician. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. §

3    404.1527) (quotation and citation omitted).  Here, the ALJ fails to provide any reasons for rejecting

4    Ms. Nichols's uncontradicted opinion.  AR 26-27.

5         As for Drs. Choi's and Inoue's medical opinions, Mr. Facen argues that the ALJ merely

6    summarized their December 2, 2009 letter in his decision, but did not provide legitimate reasons for

7    adopting a contrary opinion.  Motion, ECF No. 24 at 14.

8         Here, despite Mr. Facen's argument, Drs. Choi and Inoue's letter did not provide any evidence

9    that contradicted the ALJ's findings.  AR 503-504; AR 26-27.  Their opinions do not support or

10   discredit the ALJ's argument that Mr. Facen's drug use is material to his disability.  As previously

11   stated, when an ALJ rejects the uncontradicted opinion of a treating source, he or she must provide

12   clear and convincing reasons that are supported by substantial evidence for doing so.  *Ryan*, 528 F.

13   3d at 1198.  The ALJ does not actually reject Drs. Choi's and Inoue's opinions.  AR 26-28.  Hence,

14   Mr. Facen's contention that the ALJ erred in failing to explain his reasons for opposing Drs. Choi

15   and Inoue's opinions is unwarranted.

16        In sum, Mr. Facen correctly argues that the ALJ erred in two ways.  One, the ALJ failed to

17   show that Mr. Facen's substance use markedly affected his functioning.  Two, he failed to

18   demonstrate through the record that Mr. Facen's substance use markedly affected his functioning.

19   **V. Mr. Facen Might Not be Disabled if He Adhered to His Medication**

20        As noted above, the Commissioner makes a potentially dispositive argument in her cross-

21   motion.[4]  She contends that Mr. Facen cannot receive benefits because his impairments could be

22   controlled if he took his proscribed psychiatric medication.  Cross Motion, ECF No. 26 at 7.

23        Generally, a claimant is not eligible for social security benefits if his or her disability can be

24   controlled by medication.  20 C.F.R. § 416.930(a).  "In order to get benefits, [a claimant] must

25   follow treatment prescribed by [his] physician if this treatment can restore [the claimant's] ability to

26   work."  *Id*.  If the treatment can control the claimant's impairments effectively, then he or she is not

27   ────────────────────

28        [4] Again, the court notes that Mr. Facen did not file a reply to the Comissioner's cross-motion.
     *See generally* Docket.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    eligible for social security benefits.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

2    Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the

3    purpose of determining eligibility for SSI benefits.").

4          An ALJ may consider an "unexplained or inadequately explained failure to seek treatment or

5    to follow a prescribed course of treatment" to determine the eligibility of the claimant's disability.

6    *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2011).  Notably though, "[f]ailure to follow a

7    prescribed course of remedial treatment without good reason is grounds for denying an application

8    for benefits."  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *see also* 20 C.F.R. §

9    416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find

10   you disabled.").  "While there are any number of good reasons for not [seeking treatment or

11   following a prescribed course of treatment], a claimant's failure to assert one, or a finding by the

12   ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain

13   testimony."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (internal citations omitted).  In

14   evaluating a claimant's symptom severity, an ALJ may consider relevant factors such as "[t]he type,

15   dosage, effectiveness, and side effects of any medication" the claimant takes or has taken to alleviate

16   symptoms, as well as "[t]reatment, other than medication," the claimant receives or has received for

17   symptom relief.  20 C.F.R. § 416.929(c)(3)(iv).

18         Here, the ALJ relied on the testimony of the psychological expert, Dr. Anderson, to determine

19   that Mr. Facen's disability could be treated by his adherence to psychiatric medication.  AR 63.  Dr.

20   Anderson testified that Mr. Facen "would have been much better" had he started pharmacology three

21   years earlier immediately after his diagnosis.  *Id*.  Dr. Anderson cautioned that he "had no idea

22   whether the treatment [Mr. Facen] only recently begun is going to be effective or not," but explained

23   that "there's every reason to believe that it can be and will be."  AR 65.  In his analysis, the ALJ

24   referenced Dr. Anderson's testimony in addition to the record and Mr. Facen's continued use of

25   marijuana and reluctance to take medication to evaluate the credibility of his impairments.  AR 27.

26         The next consideration is whether Mr. Facen offered any "good reasons" for deciding against

27   using medication.  The record is largely bare on this issue.  In her progress note, Mr. Facen's

28   clinician, Ms. Keow, noted that Mr. Facen denied any desire to take medication because he believed

UNITED STATES DISTRICT COURT
For the Northern District of California

1  that "prescribed medications are as bad as street drug[s]."  AR 307.  Mr. Facen himself testified

2  during the April 2, 2010 ALJ hearing that he thought:

3      I thought [the psychiatric drugs] were going to do the opposite of what they were meant
       to do.  I thought - thought I was going to get more depressed than I already am.  And, I
4      thought that, like, it may increase my chances of me, you know, hurting myself or, you
       know, hurting others.

5

6  AR 57.  Beyond his own opinion, however, Mr. Facen's treating physicians provided no support to

7  validate his reason for rejecting medication.  For an ALJ to disregard a claimant's self-serving

8  statements, the statements must not be supported by objective findings.  *Maounis v. Heckler*, 738 F.

9  2d 1031, 1034 (9th Cir. 1984).  Here, the record does not substantiate Mr. Facen's reason for

10  denying medication.  None of his treating physicians broached the issue.

11      In fact, only Mr. Facen's attorney, Nancy McCombs, attempted to explain Mr. Facen's

12  decision against taking medication.  AR 67-68.  She asked Dr. Anderson whether Mr. Facen's Axis

13  II personality traits contributed to his refusal to take antidepressants.  AR 67.  In response, Dr.

14  Anderson testified that Mr. Facen's decision more likely grew from a "stage of life issue" where:

15      It's a very very common struggle that people who have significant emotional difficulties in
       that transition from adolescence into young adulthood have around dependency on anything
16     related to an authority figure, i.e. a physician offering drugs.  So it isn't necessarily a
       function of psychopathology.  It is a– it is a part of the development stage that they find
17     themselves in.

18  AR 68.  Beyond Ms. McCombs's efforts, there was nothing on this issue.

19      Given that only Dr. Anderson opined on this issue, the next question is whether the ALJ gave

20  appropriate weight to his findings as a non-treating physician.  The answer is yes.

21      The law provides little guidance in cases such as these where the ALJ relies on a non-treating

22  examiner's opinion that neither rejects the treating physician's findings nor is supported by them.

23  Generally, a non-examining physician's opinion cannot alone constitute substantial evidence to

24  reject the opinion of an examining or treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th

25  Cir. 1990).  The opinion of a non-treating physician, however, may itself be a source of substantial

26  evidence where the opinion of the claimant's treating physician is contradicted, and the opinion of a

27  non-treating source is based on independent clinical findings that differ from those of the treating

28  physician.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  In cases where such

1    discrepancies exist, it is the ALJ's responsibility to resolve the conflict.  *Id.*

2         Here, Dr. Anderson's testimony is given appropriate weight.  First, Dr. Anderson does not

3    reject the treating physicians' findings.  AR 63.  His point is that Mr. Facen "would have been much

4    better" had he started his medication earlier.  *Id.*  Mr. Facen's treating physicians do not address this

5    point at all; they neither support nor contradict it.  Additionally, while Dr. Anderson's opinion does

6    not stem from his own clinical findings as the Ninth Circuit instructs, it does not bear this burden

7    because it does not contradict any treating physicians' opinions either.  Of primary significance here

8    is the spirit of the Ninth Circuit's instruction that a non-treating physician's opinion can be a source

9    of substantial evidence.  Here, the ALJ cannot be faulted for relying on the only evidence available

10   (Dr. Anderson's) to appropriately address the potentially dispositive issue of whether Mr. Facen

11   would still be disabled if he took his proscribed medication.

12        On this point, Mr. Facen takes issue and contends that the ALJ can be faulted for relying on an

13   incomplete record.  Motion, ECF No. 24 at 15.  Specifically, he argues that the ALJ failed to comply

14   with the Appeals Council's order to obtain an additional psychological consultative examination.  *Id.*

15   Mr. Facen is correct, and the ALJ's error must be remedied given its potential relevance to the

16   dispositive issue in this matter.

17        The Appeals Council may remand a case "in which additional evidence is needed or additional

18   action by the administrative law judge is required."  20 C.F.R. § 404.977(a).  When the Appeals

19   Council remands a case to an ALJ, the ALJ "shall take any action that is ordered by the Appeals

20   Council and may take any additional action that is not inconsistent with the Appeals Council's

21   remand order."  *Id.* § 404.977(b).  In certain cases, an ALJ's "failure to adhere strictly" to an

22   Appeals Council's remand order can constitute a harmless error when substantial evidence supports

23   the ALJ's decision.  *Rogers v. Astrue*, No. 06-1258, 2008 WL 850131 at *16 (E.D. Cal. Mar. 28,

24   2008).

25        Here, the ALJ's error in failing to comply with the Appeals Council's remand order is not

26   harmless.  The Appeals Council explicitly ordered the ALJ to obtain "a psychological consultative

27   examination with psychological testing and a statement regarding [Mr. Facen's] ability to perform

28   work-related activities."  AR 128.  The ALJ failed to comply.  AR 19-29.  This error may be

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1    potentially harmful because there is a possibility that the additional evidence ordered by the Appeals

2    Council could have provided relevant information.  As the additional evidence concerns Mr. Facen's

3    work ability, there is the possibility that it may have addressed whether or not Mr. Facen would be

4    capable of working if he adhered to his medication.  As such, the ALJ's failure to comply with the

5    Appeal Council's remand order may have precluded relevant information.  Accordingly, it

6    constitutes error.

7        Therefore, remand to the agency with instructions to obtain additional and updated information

8    to complete the administrative record in accordance with the regulatory standards regarding

9    consultative examinations and existing medical evidence.  20 C.F.R. §§ 416.912-913.  The

10   additional evidence should include a psychological consultative examination with psychological

11   testing and a statement discussing the claimant's ability to perform work-related activities.  The

12   statement should factor in any related effects that medication usage may have.

13                                              **CONCLUSION**

14       The court **GRANTS IN PART** and **DENIES IN PART** Mr. Facen's motion for summary

15   judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this

16   case to the Administrative Law Judge to obtain additional and updated information consistent with

17   this order.

18   **IT IS SO ORDERED.**

19       Dated: August 23, 2013

20                                                       _____
                                                         LAUREL BEELER
                                                         United States Magistrate Judge

21

22

23

24

25

26

27

28

C 12-04648 LB
ORDER                                                28